IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RONALD G. WOLFF, JR. and KARRI
E. WOLFF,

                      Plaintiffs,            OPINION AND ORDER

  v.

                                                  22-cv-177-wmc

ADMINISTRATOR TINA RENEE
VIRGIL, in her official capacity, and
SPECIAL AGENT JAY YERGES, in his
personal and official capacity,

                      Defendants.

---

      This lawsuit arises out of a search warrant issued and executed by the Wisconsin Department of Justice, Division of Criminal Investigation ("DCI") in March 2022. Plaintiffs Ronald Wolff, Jr. and Karri Wolff contend that defendant DCI Special Agent Jay Yerges relied on an unconstitutional "general warrant" to conduct an unreasonable search of their homes and businesses in violation of their rights under the Fourth Amendment. They also contend that DCI Administrator Tina Virgil continues to violate their rights by refusing to return property seized during the search. Plaintiffs seek damages and injunctive relief. Neither party sought summary judgment on these Fourth Amendment claims and the case is scheduled for a jury trial on September 21, 2023, with a final pretrial conference on August 8, 2023, at 2:30 p.m. The following order addresses the issues for trial and the parties' motions in limine.

OPINION

I. Issues for Trial

      In their recent trial submissions, plaintiffs state that the only claims they are still pursuing challenge: (1) whether the warrant satisfied the particularity requirement of the

Fourth Amendment (against defendant Yerges); (2) whether the search and seizures exceeded the scope of the warrant (against defendant Yerges); and (3) whether the continued retention of their property is unreasonable (against defendant Virgil in her official capacity). (Plts.' MIL (dkt. #118) 1.) Thus, plaintiffs have apparently withdrawn their due process claims, perhaps realizing that the claim was subsumed by their claims challenging the search and seizure.[1] Their proposed jury instructions confirm this, with all their substantive instructions based on the Fourth Amendment. (Plts.' Prop. JI (dkt. #115) 2–9.) Accordingly, the court will focus on the scope of plaintiffs' remaining Fourth Amendment claims and what aspects, if any, are appropriate for the court to decide as a matter of law or require a jury to decide as a matter of disputed facts.

Turning first to plaintiffs' claim that the warrant itself was invalid, both sides proposed jury instructions and verdict questions relating to the legality of the warrant itself. However, whether a warrant satisfies the particularity requirement of the Fourth Amendment is a question of law to be decided by the court, not a jury. *United States v. Vitek Supply Corp.*, 144 F.3d 476, 480 (7th Cir. 1998) (citing *United States v. Klebig*, 228 F. App'x 613, 616 (7th Cir. 2007)); *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011); *see also Archer v. Chisholm*, 870 F.3d 603, 615–16 (7th Cir. 2017) (reviewing de novo the question whether a search warrant was sufficiently particular). If plaintiffs want to pursue a claim challenging the validity of the warrant, therefore, they must address that claim to the court. At the final pretrial

---

[1] In their complaint, plaintiffs had also raised claims under the Fifth and Fourteenth Amendment due process violation based on the confiscation of their property, as well as Fourth Amendment excessive force against an unknown officer involved in the search and unreasonable seizure during the search. (Plts.' Cpt. (dkt. #1).) Plaintiffs later withdrew their excessive force claim against the unknown defendant, and that claim was dismissed without prejudice. (June 26, 2023 Order (dkt. #91).)

conference, the court will discuss with the parties the most efficient and practical method for resolving that claim. In particular, in preparing, plaintiffs need to address how their claim survives the well-established principle that an investigating officer is generally entitled to rely on a warrant issued by a judge, even if the warrant is flawed. *Archer*, 870 F.3d at 613–14.

The factual basis for plaintiffs' second claim is unclear. Plaintiffs assert generally that the searches and seizures were executed in an unreasonable manner, but the specific allegations supporting this claim are not clear from plaintiffs' complaint or pretrial filings. In particular, it is not clear whether plaintiffs allege that defendant Yerges' search went beyond the scope of the warrant, resulted in seizure of property not covered by the warrant, or was unreasonable because it involved too many officers or excessive force. At one point, plaintiffs allege that Karri Wolff was coerced into an interview with an officer during the search, but they do not allege that defendant Yerges was involved in that interview. Thus, plaintiffs' second claim *may* be an appropriate claim for a jury -- especially if there are disputed issues of fact regarding the execution of the warrant or whether property was seized that fell outside the scope of the warrant -- but it is not at all clear what actions or inaction by Yerges, if any, were unreasonable in the execution of the warrant.

Moreover, defendant Yerges has invoked qualified immunity as an affirmative defense to plaintiffs' claims, which is also a question of law for the court. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."); *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (same). And while qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once raised. *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013). To do

so, the plaintiff must show that: (1) the defendant violated a constitutional right when construing the facts in the light most favorable to the plaintiff, and (2) that right was established by controlling law on reasonably equivalent facts at the time of the alleged violation, such that it would have been clear to a reasonable actor that her conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A failure to show either is fatal for the plaintiff's damages claims. *Id.* at 236.

To defeat defendant Yerges' qualified immunity defense in this case, plaintiffs will not only need to distinguish *Archer*, but will need to show that his actions in obtaining or executing the warrant violated clearly established federal law. The qualified immunity analysis requires a "high degree of specificity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (citations omitted). This means that the question is not simply whether the Fourth Amendment prohibits general warrants, but whether "the official acted reasonably in the particular circumstances that he or she faced" in this case. *Id.* (citations omitted.) Applied here, plaintiff must cite specific U.S. Supreme Court or Seventh Circuit case law clearly establishing that an officer in defendant Yerges' position would know that the warrant was invalid or the execution of the warrant was unreasonable.

So far, plaintiffs' primary argument seems to be that Yerges obtained the warrant despite knowing that the initial complaints against plaintiffs were politically motivated. Specifically, they allege that a town official who opposed Ronald Wolff's position on special assessments was attempting to undermine Wolff's influence in town board elections. Plaintiffs allege that Yerges should have disclosed this political motivation to the state court judge who reviewed the warrant and his supporting affidavit. However, Yerges' affidavit supporting his search warrant request discusses this political conflict between factions on the Town Board, as

well as concerns raised by Town officials holding different views than Wolff on issues of special assessments and town contracts.  (Dkt. #66-1.)

As pertinent to Yerges' qualified immunity defense, therefore, it would appear necessary for plaintiffs to direct the court to controlling caselaw holding that a law enforcement officer should know that his supporting affidavit for a warrant is invalid because it failed to spell out potential political conflicts in more detail than provided here.  At this point, the most analogous case found by the court in the Seventh Circuit appears to hold just the opposite.  In *Archer*, investigators obtained a warrant to search the home of the governor's close associate in an investigation into public corruption.  *Archer*, 870 F.3d at 608.  The plaintiff in that case also asserted that the warranted search was politically motivated and the search itself was conducted unreasonably.  Police officers had arrived early in the morning at the plaintiff's home, brought a "battering ram" onto the plaintiff's front lawn, "thunderous[ly] hammered" on the front door and "shouted that she had to open it or they would break it down."  *Id.*  at 610.  When the plaintiff opened her door, officers "entered with their guns drawn and proceeded to search every nook and cranny."  *Id.*  The search lasted several hours, during which officers prohibited the plaintiff and her partner from leaving the house, even though her partner needed to get to work.  *Id.*  Nevertheless, the Seventh Circuit concluded that although the police tactics were "rough," there was nothing "objectively unreasonable" in what occurred.  *Id.* at 617.  The court of appeals also held that the police were entitled to qualified immunity on the plaintiff's challenge to the particularity of the warrant because under the circumstances of a corruption investigation, "granular detail is impossible, [and] generic descriptions of the items to be seized are sufficient so long as they particularize the types of items to be seized."  *Id.* at 616.  Finally, the court held that the plaintiff's assertion that she had been targeted politically did not

invalidate the warrant, as she had no evidence that: the authorizing judge was biased; anything in the supporting affidavit was false or misleading; or additional facts about the politics of the search would have negated probable cause. *Id.* at 615.

Based on the facts in the record of this case thus far, the general warrant, search and surrounding circumstances in *Archer* appear to be similar to that at issue in this case, if not even more concerning. For purposes of qualified immunity then, it appears that a reasonable officer would not have thought that the warrant or its execution violated the Fourth Amendment. Unless plaintiffs can identify a different, more analogous, controlling case that should have placed defendant Yerges on notice that his actions violated clearly established law, plaintiffs' damages claims will not survive his qualified immunity as a matter of law.

This would seemingly leave only plaintiffs' claim for injunctive relief against defendant Virgil, in her official capacity, for the return of their property, and that claim, too, would be for the court, not the jury. *See Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 648 (7th Cir. 2002) ("If the only relief sought is equitable, such as an injunction or specific performance (a type of affirmative injunction), neither the party seeking that relief nor the party opposing it is entitled to a jury trial.") However, it is not clear how even that claim would survive if plaintiffs cannot show that the warrant was unlawful or that the property seized fell outside the scope of the warrant, except perhaps based on a showing of an unreasonable delay in its return.

Given the court's concerns about the appropriateness of a jury trial in this case, therefore, the parties should, at minimum, be prepared to address the following questions at the final pretrial conference:

1) What specific claims are plaintiffs still pursuing?

2) What disputed issue of fact remain for a jury to decide?

3) What United States Supreme Court or Seventh Circuit case law clearly establishes that defendants violated the Fourth Amendment under equivalent circumstances to this case even viewing the facts most favorably to plaintiffs?

4) If defendants acted in good faith in executing the warrant or, alternatively, the warrant is valid under the Fourth Amendment, under what legal theory would plaintiffs be entitled to injunctive relief for a return of their property seized pursuant to the warrant?

The court will determine the nature of the trial, if any, that should be held based on the discussion of these and related issues at the final pretrial conference scheduled for next Tuesday, August 8th at 2:30 p.m.

## II. Motion in Limine

In addition, the court addresses the parties' pending motions in limine below for discussion next Tuesday.

### A. Plaintiffs' motion in limine (dkt. #118)

Plaintiffs filed a "motion in limine" asking the court to preclude all evidence and argument that is "not relevant" to issues as to whether the warrant, search and seizure were unconstitutional. However, the court cannot rule on such a vague and overly broad motion in limine. In particular, plaintiffs fail to identify any specific evidence or line of testimony that should be excluded, and the court declines to rule on general categories in a vacuum. Accordingly, this motion is DENIED.

B. **Defendants' omnibus motion in limine (dkt. #107)**

1. **Exclude evidence or argument regarding the causation of plaintiffs' alleged injuries, permanence, future care and treatment, or future pain and suffering**

Defendants concede that plaintiffs may testify about their own perception of their physical and mental health before and after the incident, but seek to preclude plaintiffs or any other lay witnesses from testifying that any specific incident caused any health problems or a specific medical diagnoses.  Plaintiffs do not object to this motion, so it is GRANTED, with the caveat that plaintiffs may testify about their own perceptions of their injuries and may introduce other evidence of damages falling outside the confines of this motion.

2. **Exclude evidence or argument regarding sale of businesses or business losses on the ground that the businesses are owned by separate legal entities and plaintiffs do not have any evidence supporting such losses**

Plaintiffs do not oppose this motion either, with the caveat that they intend to introduce evidence of the personal physical property that was taken and for which they seek return.  With that caveat, the motion is GRANTED.

3. **To limit plaintiffs' claim against defendant Virgil as claim for prospective injunctive relief**

This motion is also GRANTED as unopposed.

4. **Exclude testimony, other evidence, argument or questioning regarding the details of lawsuits relating to the DOJ or DOJ employees**

Plaintiffs do not object to this motion as well, with the caveat that:  (1) they may use such evidence for impeachment purposes; and (2) if defendants open the door, though they have no current plans to do so.  With those caveats and subject to advance discussion

outside the jury's presence as to whether defendants have "opened the door" whether at side bar or at a break in trial, this motion is GRANTED.

5. **Exclude reference to the details of other legal proceedings involving defendants or defense witnesses, or to defendants' personnel file work histories**

This motion is GRANTED with the same caveats as the previous motion: plaintiffs may use such evidence for impeachment or if plaintiff confirms outside the jury's presence defendants have opened the door.

6. **Exclude evidence or argument as to any claims that were dismissed by the court**

This motion is GRANTED with some clarification. Neither party may discuss *claims* that were dismissed earlier in this case. However, plaintiffs may testify regarding relevant facts to the claims remaining in the case, whether or not also related to those claims previously dismissed.

7. **Motion for a ruling that if Officer Yerges reasonably relied on the judicially-issued search warrant, he is entitled to qualified immunity from suit**

Plaintiffs oppose this motion, but as discussed in detail above, defendant Yerges is entitled to qualified immunity unless plaintiffs show that he violated a clearly established law of which a reasonable officer should have known. Thus, this motion is RESERVED for the reasons discussed above.

8. **Exclude evidence or argument that Yerges' questioning of plaintiffs constituted an unlawful seizure under the Fourth Amendment as the plaintiffs consented to the questioning**

Finally, plaintiffs suggest that it was unlawful for law enforcement officers to detain them in their home during the search, but this is a misstatement of current law. Officers may lawfully detain occupants of a location to be searched when they execute a valid warrant. *Archer*, 870 F.3d at 618. As for the interviews of plaintiffs in particular, the transcript of Ronald Wolff's interview confirms that he agreed to speak with defendant Yerges voluntarily. (Dkt. #111-1, at 3.) As for Kari Wolff, it appears defendant Yerges did not interview her, and plaintiffs do not explain how he could be held liable for any unlawful seizure of Kari based on another officer's interview during the execution of the search warrant. Accordingly, this motion is also GRANTED.

C. **Voir Dire, Jury Instructions and Trial Exhibits**

For obvious reasons, the court will postpone issuance of proposed voir dire and jury instructions until after the August 8th final pretrial conference. Those will be taken up at the already rescheduled follow up conference set for August 15th at 2:30 p.m., along with any remaining objections to the parties' respective trial exhibits.

ORDER

IT IS ORDERED that:

1) Plaintiffs motion in limine (dkt. #118) is DENIED.

2) Defendants' motions in limine (dkt. #107) are GRANTED IN PART and RESERVED IN PART, as set forth above.

3) The parties should be prepared to address the court's concerns regarding the remaining issues for trial, if any, and rulings on the parties' motions in limine at the final pretrial conference on August 8, 2023.

Entered this 4th day of August, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge