IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RONALD G. WOLFF, JR. and KARRI
E. WOLFF,

                    Plaintiffs,

   v.

ADMINISTRATOR TINA RENEE
VIRGIL, in her official capacity, and
SPECIAL AGENT JAY YERGES, in his
personal and official capacity,

                      Defendants.

OPINION AND ORDER

22-cv-177-wmc

---

Plaintiffs Ronald Wolff, Jr. and Karri Wolff contend that defendant Jay Yerges, a special agent with the Wisconsin Department of Justice Division of Criminal Investigation ("DCI"), violated their Fourth Amendment rights in conducting a search of their homes and properties. Plaintiffs claim the search violated the Fourth Amendment in two ways: the search warrant Yerges obtained was overbroad and lacking in particularity; and the search warrant was executed in an unreasonable manner.[1]  As the court explained in a previous order (dkt. #132), and again at the August 8 and August 15, 2023 final pretrial conferences, the validity of the search warrant, and whether Yerges is entitled to qualified immunity in relying on it, are both legal questions that must be decided by the court.  In this order, the court now concludes that plaintiffs' claims against Yerges are barred by the doctrine of qualified immunity.

---

[1] Plaintiffs also claimed originally that DCI Administrator Tina Virgil's refusal to return property seized during the search violated their Fourth Amendment rights.  However, plaintiffs have since conceded that Virgil is not the appropriate defendant for this claim, as the prosecutors who filed criminal charges against plaintiff Ronald Wolff in state court are responsible for deciding whether to release or retain property seized during the search of plaintiffs' properties. (Dkt. #167, at 1.)  Accordingly, the court will dismiss plaintiffs' claims against Virgil.

OPINION

The Fourth Amendment requires that search warrants be supported by probable cause, and "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This means that "the scope of the authorized search [must be] set out with particularity." *Kentucky v. King*, 536 U.S. 452, 459 (2011); *see also Massachusetts v. Sheppard*, 468 U.S. 981, 988 n. 5 (1984) ("[A] search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional."). The warrant requirements of the Fourth Amendment are not mere formalities; they serve a "high function" of shielding citizens' private lives from all but necessary and fully justified governmental intrusion. *McDonald v. United States*, 335 U.S. 451, 455 (1948). In addition, the Fourth Amendment requires that the warranted search itself be conducted reasonably *and* within the scope of the warrant. *Archer v. Chisholm*, 870 F.3d 603, 616 (7th Cir. 2017). Thus, a warrant does not permit officers to conduct a "general exploratory rummaging through one's belongings." *Id.* (citation omitted).

As previously discussed at the final pretrial conferences, flaws exist in the warrant on which defendant Yerges relied in executing his search under the Fourth Amendment, as well as in his supervision of that search. However, a government defendant is entitled to qualified immunity unless the plaintiff shows not only that the defendant violated his rights, but also that his rights were "clearly established" at the relevant time. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (qualified immunity protects government officials

from personal liability provided that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

A law is "clearly established" if the law was sufficiently clear at the time of the officer's conduct that "every reasonable official would understand" the conduct "is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). In other words, "existing law must have placed the constitutionality of the conduct 'beyond debate.'" *Id.* This doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

The Supreme Court has cautioned lower courts to "think hard, and then think hard again" before addressing the merits of an underlying constitutional claim when, as here, a defendant has raised a qualified immunity defense. *Wesby*, 583 U.S. at 62 n.7 (citing *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). Therefore, the court directed the parties to submit additional briefing on Yerges' qualified immunity defense before proceeding with a jury trial in this case. After reviewing the parties' supplemental briefing, the court concludes that Yerges is entitled to qualified immunity.

Generally, to overcome a defendants' qualified immunity defense, plaintiffs must point to either: (1) a closely analogous, binding case that was decided in their favor; *or* (2) a more general constitutional rule that applies "with obvious clarity" to the defendant's conduct. *See Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021). Despite numerous opportunities to do so, neither side has been able to point this court to a closely

3

analogous, binding case from the United States Supreme Court or Seventh Circuit case establishing Yerges's conduct to be unconstitutional. The court likewise has found no such case. Accordingly, the question here is whether Yerges' conduct violated a more general constitutional rule with "obvious clarity."

To begin, it is "clearly established" that a warrant must identify: (1) the specific offense for which the police have established probable cause, *United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018); (2) describe the place to be searched, *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000) (citing *Steele v. United States*, 267 U.S. 498, 503 (1925)); and (3) specify the items to be seized by the relation to the designated crimes, *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *Marron v. United States*, 275 U.S. 192, 196, (1927); *U.S. v. Vitek Supply Corp.*, 144 F.3d 476, 481-82 (7th Cir. 1998). Here, the warrant Yerges obtained identified the crime under investigation (misconduct in public office, contrary to Wis. Stat. § 946.12(3)); identified specifically the places to be searched; and included a 12-point list that described the things to be seized, including documents evidencing or tending to evidence possible misconduct in office from April 6, 2021 to present; computers and computer hardware devices; internal and external electronic storage devices; routers, modems, and network equipment; manuals, instructions and software installation disks; materials showing passwords for seized devices; and other items which may constitute evidence of crimes relating to misconduct in public office. (Dkt. #110-3.)

Understandably, plaintiffs contend that the warrant is extraordinarily broad and gave searching officers too much discretion to determine which items might fit into the catch-all -- "other items which may constitute evidence of crimes related to misconduct in public office." The court agrees that the warrant is surprisingly broad, and it is troubled

by the breadth of the categories of items, coupled with the fact that it occurred across three properties, with at least 10 officers involved in the search. (Dkt. #156.) However, plaintiffs fail to direct the court to any caselaw where a court determined that a similar warrant, much less a closely analogous one, violated the Fourth Amendment. To the contrary, and as discussed in one of this court's previous decisions, the Seventh Circuit determined that in the context of a corruption investigation, "granular detail is impossible, [and] generic descriptions of the items to be seized are sufficient so long as they particularize the types of items to be seized." *Archer*, 870 F.3d at 616; *see also Bishop*, 910 F.3d at 337) ("a warrant authorizing a search for documents that will prove a crime may authorize a search of every document the suspect has, because any of them might supply evidence.")

Moreover, the Supreme Court has emphasized that the threshold for overcoming qualified immunity is particularly high in cases in which a search warrant was issued by a judicial commissioner who has *not* been shown to have been biased, because "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Indeed, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner," so it would be "rare" to overcome qualified immunity in such circumstances. *Id.* at 546, 556; *see also id.* at 554 (observing that if police officers who sought and obtained a search warrant were incompetent, then "their supervisor, the deputy district attorney, and the magistrate were as well" because all approved the same application). In this case, defendant Yerges' warrant was reviewed and approved by the district attorney and a state court judge, and

plaintiff has not shown this to be that rare warrant in which defendant should have questioned their judgments. Thus, he is entitled to qualified immunity with respect to plaintiffs' particularity challenge.

Defendant Yerges is likewise entitled to qualified immunity on plaintiffs' challenge to his conduct in executing the warrant. Plaintiffs contend that Yerges should have done more to prepare the officers engaged in executing the warrant, so as to prevent seizure of items falling outside the scope of the warrant. More specifically, plaintiffs identify several items that they believe should not have been seized during the search, including a credit card, divorce and custody paperwork, addresses of family and friends, dental work records, printed emails about a family reunion and a baby shower in 2018, printed emails about life insurance policies dated from 2015, an unemployment file, and many business records (most specifically, those for "Willow Lane Assisted Living") that had nothing to do with the topics specified in the warrant.

However, defendant responds that his actions in preparation and supervision were sufficient to satisfy his obligations under the Fourth Amendment. To begin, defendant points out Yerges held an hour-long meeting that included in attendance every agent participating in the search. Yerges also handed out copies of an operational plan to execute the warrant and the actual warrant. Plus, he answered any questions agents had about the scope of the warrant and the search. Finally, Yerges assigned an agent to act as team leader at each location supervise collection and cataloging of evidence taken. All team leaders were also given a copy of the warrant to keep at the location to guide their decision-making, as well as that of the agents conducting the physical search at each location.

Certainly, Yerges may have been able to take additional steps to prepare the agents involved in the search, such as by providing specific examples of the types of documents and items that fell within or outside the scope of the warrant. However, plaintiffs have once again failed to identify any case requiring defendant Yerges to do more "with obvious clarity" than what he did in his roll as supervisor of the search, nor point to any case that should have put Yerges on notice that he or the agents he ultimately supervised were violating any clearly established Fourth Amendment boundaries. Accordingly, as sympathetic as this court may be that Yerges may have been unwittingly pulled into and used as part of a local, political firestorm, he is entitled to summary judgment on this claim as well.

ORDER

IT IS ORDERED that:

1. Plaintiffs Ronald Wolff, Jr. and Karri Wolff's claims against defendants Jay Yerges and Tina Virgil are barred by the doctrine of qualified immunity.

2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 23rd day of October, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge